United States Court of Appeals,

Fifth Circuit.

No. 95-50060.

TEXAS FOOD INDUSTRY ASSOC., National-American Wholesale Grocers' Assoc./International Foodservice Distributors Assoc., National Grocers Assoc., Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant-Appellant.

April 30, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before REYNALDO G. GARZA, JOLLY and DUHÉ, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The National-American Wholesale Grocers' Association/International Foodservice Distributors Association ("NAWGA") is a national trade association comprised of over 200 wholesale grocery distribution companies, a number of which are multi-billion dollar corporations. NAWGA prevailed in litigation against the United States. It now seeks an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 et. seq. EAJA limits eligibility for a fee award to entities based on net worth and number of employees. The sole question presented by this appeal is whether eligibility of a trade association for an EAJA award is determined by reference to the assets and size of the association itself or whether the association's eligibility additionally hinges on the assets and size of its constituent members. We conclude that, under the plain language of the statute, an association's eligibility for a fee

award under EAJA § 2412(d)(2)(B) depends only on the association's net worth and size, and we affirm the district court's award of attorneys' fees and expenses in the amount of $163,083.75 to NAWGA.

I

NAWGA incurred the attorneys' fees at issue when it and two other meat and poultry industry trade associations (together, the "Trade Associations") brought this action on behalf of their members to delay implementation of an interim final rule promulgated by the United States Department of Agriculture ("USDA"). The interim rule, which required packages of meat to contain safe handling and preparation instructions, provided only for a 30-day, post-rule comment period. USDA solicited no comments prior to its promulgation of the interim rule.

In the merits phase of this action, the Trade Associations challenged USDA's failure to comply with the notice and comment requirements of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 553. In October 1993, the district court entered judgment for the Trade Associations, finding that USDA violated the APA and preliminarily enjoining it from enforcing the interim rule. USDA then issued a proposed rule in conformity with the APA. Following a full comment period, USDA published a final rule on March 28, 1994, imposing essentially the same labelling requirements. The Trade Associations then moved to dismiss their action against USDA as moot. The district court granted dismissal on May 31, 1994.

On June 30, 1994, NAWGA, which financed the APA litigation for itself and its co-plaintiffs out of its general operating budget,

alone applied for attorneys' fees under EAJA, 28 U.S.C. § 2412(d). It is this phase of the case that is at issue on this appeal. USDA vigorously contested NAWGA's eligibility for an EAJA award, contending, among other things, that NAWGA, which employs only 36 full-time employees and has a net worth of approximately $3.3 million, exceeded EAJA's eligibility limitations for net worth and size. To be eligible for a fee award, an association must employ no more than 500 employees and have a net worth of not more than $7 million. 28 U.S.C. § 2412(d)(2)(B)(ii). NAWGA was ineligible for an EAJA award, USDA argued, because § 2412(d)(2)(B)(ii) requires the aggregation of the net worth and size of a trade associations' individual members when the association is representing primarily the members' interests in litigation. USDA also argued that NAWGA is ineligible for a fee award because the individual ineligible members of the Trade Associations would receive a "free ride" if the costs of the APA litigation is paid for under EAJA.

The district court rejected USDA's aggregation and "free rider" arguments and awarded NAWGA fees and expenses in the amount of $163,083.75. USDA filed a timely notice of appeal from the EAJA award on the question of NAWGA's eligibility for fees.

II

We review the conclusions of law underlying a denial of attorneys' fees *de novo. Perales v. Casillas,* 950 F.2d 1066, 1072 (5th Cir.1992). Because EAJA is a partial waiver of sovereign immunity, it must be strictly construed in the government's favor. *Ardestani v. INS,* 502 U.S. 129, 137, 112 S.Ct. 515, 520-21, 116

3

L.Ed.2d 496 (1991); *Perales,* 950 F.2d at 1076.

Whether the aggregation of the net worth and size of an association's members is required when determining the association's eligibility for a fee award is a question of the proper interpretation of § 2412(d)(2)(B)(ii).[1] A prevailing party is eligible for fees and expenses only if he meets the statutory definition of a party:

> (d)(2) For purposes of this subsection—
>
>> (B) "party" means ... (ii) any owner of an unincorporated business, or any partnership, corporation, *association,* unit of local government, or organization, *the net worth of which did not exceed $7,000,000* at the time the civil action was filed, *and which had not more than 500 employees* at the time the civil action was filed; *except* that *an organization described in section 501(c)(3)* of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, *or a cooperative association* as defined in section 15(a) of Agricultural Marketing Act (12 U.S.C. 1141(j)(a)), *may be a party regardless of the net worth* of such organization or cooperative association * * *.

28 U.S.C. § 2412(d)(2) (emphasis added).

NAWGA urges us to accept the district court's construction of § 2412(d)(2) that a prevailing association is a "party" if it meets the provision's bright-line rule for eligibility, and nothing more.

---

[1]The circuit courts have divided on the issue of aggregation. The United States Court of Appeals for the Sixth Circuit, in *National Truck Equipment Association v. National Highway Traffic Safety Administration,* ruled that aggregation is appropriate where an association's members received significant benefits from affiliating with the association in the litigation. 972 F.2d 669 (6th Cir.1992). In contrast, the United States Court of Appeals for the Ninth Circuit, in *Love v. Reilly,* held that where an association is a legitimate party with standing in litigation, the fact that an ineligible constituent member benefitted from the litigation does not preclude an EAJA fee award to the association. 924 F.2d 1492, 1494 (9th Cir.1991).

4

Although USDA concedes that "neither the language of the statute nor the legislative history explicitly directs aggregation of the net worth and number of employees of an association's members," it nevertheless contends that structure of § 2412(d)(2)(B) betrays an implicit aggregation requirement that is applicable here.

As support for its construction, USDA points out that § 2412(d)(2) explicitly exempts agricultural cooperatives and non-profit organizations from EAJA's net worth limit.[2] Citing Senator DeConcini's post-enactment explanation of the provision,[3] USDA characterizes this treatment of agricultural cooperatives and non-profits as a waiver of the statute's "implicit net worth aggregation requirement." From these "exceptions"[4] and the statutory canon *expressio unius est exclusio,* USDA concludes that

---

[2]Because of this carve out, non-profits and agricultural cooperatives qualify for an EAJA fee award even if their net assets exceed $7 million.

[3]Senator DeConcini remarked that:

> In the West, and I suspect in other parts of the country, small farmers often band together to form agricultural cooperatives. They have often been considered as a unit particularly in determining their assets for insurance and borrowing purposes. Such *aggregate* treatment would cause the whole cooperative to exceed the [then] $5 million limitation.

*Reauthorization of EAJA, Hearing Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary,* 98th Cong., 1st Sess. 17 (April 14, 1983).

[4]USDA also notes that Congress has clarified the definition of "party" since enacting EAJA, to express its intent that a local labor union's "entitlement to fees should be determined without regard to the assets and/or employees of the international union with which the local is affiliated." H.R.Rep. No. 99-120, 99th Cong., 1st Sess. at 17., *reprinted in* 1985 U.S.S.C.A.N. 132, 146.

"§ 2412(d)(2)(B)(ii) should be construed to exempt from the aggregation requirement only the ... types of associations specifically referred to by Congress, and no others."

We examine first the language and structure of EAJA to determine the proper meaning of the term "party." Section 2412(d) provides that attorneys' fees shall be awarded to prevailing parties and explicitly includes in the definition of a party any "association, ... the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed." § 2412(d)(2)(B). This language is clear and unambiguous. Nowhere does it limit EAJA's application only to associations whose members individually are eligible for EAJA fees. Instead, it imposes a ceiling only on the net worth and size of the association itself. It was open to Congress to include additional limitations on eligibility, such as the aggregation rule that USDA advocates, but Congress did not do so.

We are unpersuaded, moreover, that EAJA's special eligibility rule for agricultural cooperatives and non-profit organizations is evidence of an implicit aggregation rule. Neither the statute nor its legislative history suggest that the special eligibility rule for agricultural cooperatives and non-profits was motivated by concerns about ineligibility resulting from the aggregation of employees and assets.[5] Indeed, this rule does not even address the

---

[5]Congress may have been motivated by its desire to preserve the assets of non-profits for charitable purposes and to maintain the assets of cooperatives for use in farmer cooperative

subject of "aggregation"; instead, it allows a *single* agricultural cooperative or a *single* nonprofit organization to qualify for an EAJA fee award regardless of the *singular* net worth of that entity.[6]

Neither are we persuaded, on the basis of Senator DeConcini's statement, that this special eligibility rule is to be construed as a waiver of some implicit aggregation requirement. As the Supreme Court has made clear, post-enactment legislative history does not control a statute's interpretation. *Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2550-51, 101 L.Ed.2d 490 (1988). In sum, we are unable to discern in the unadorned words of § 2142(d)(2)(B) an unwritten aggregation requirement. As we have stressed repeatedly, we must "presume that a legislature says in a statute what it means and means in a statute what it says." *U.S. v. Meeks,* 69 F.3d 742, 744 (5th Cir.1995) (citing *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)).

Notwithstanding this cardinal canon of statutory

_____

ventures, however the net worth of these entities might be calculated. *See* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct,* 55 La.L.Rev. 217, 360 (1995).

[6]Significantly, the proof of aggregation that USDA offers does not support the particular aggregation rule it advances: to determine an association's EAJA eligibility, the net worth *and number of employees* of an association's constituent members are aggregated; an association is ineligible for EAJA fees if *either* aggregate figure exceeds the statutory limitations. Section 2412(d)(2), however, excepts agricultural cooperatives and tax-exempt organizations only from the net worth ceiling, not the employment size limitation. Clearly, this limited exception cannot support an implicit rule requiring the *aggregation of employees and assets.*

construction—that the words of a statute will be given their plain meaning absent ambiguity—USDA contends that an implicit aggregation rule also is necessary in order to avoid a result "that is plainly at variance with the policy of the legislation as a whole." Congress intended in EAJA, USDA argues, to reduce the financial deterrent only to small entities in litigating against the United States; it did not intend fee awards to extend to associations like NAWGA, whose membership includes multi-billion dollar corporations that have bountiful coffers from which to pay attorneys' fees. Such an "absurd result" is avoided, USDA maintains, by recognizing an implicit aggregation rule.

Because we think that judicial inquiry into the applicability of § 2414(d)(2)(B) must begin and must end with § 2414(d)(2)(B)'s clear and unambiguous words, we also reject USDA's contention that aggregation will effect Congress' intent. The statute's purpose, by its plain language, is to make associations eligible for an award on the basis of each association's independent qualifications—not the qualifications of its constituent members. Congress surely understood that "associations" are made up of constituent members, some more wealthy and larger than others, yet who have joined together to further a common business purpose. It is not implausible that Congress would think it appropriate to treat associations qua associations instead of atomizing the body politic of each association, then inspecting and distinguishing each component member to determine whether each is individually eligible. Neither is it inconceivable that Congress envisioned an

8

association as the only viable vehicle for certain small businesses to prosecute their claims against the United States. In order to deny the benefits of an EAJA award to an association's wealthy, ineligible members, USDA would have us unfairly exclude from EAJA's clear reach an association's eligible members.

USDA also fails to recognize that any implicit aggregation rule may well have application to entities other than associations. Section 2412(d)(2) lists as eligible parties the owners of unincorporated businesses, as well as partnerships, corporations, and units of local government. Although we expressly do not pass on the question, we find it unlikely that Congress intended an implicit aggregation rule to apply to these entities. Congress, for example, presumably did not intend that the courts determine a corporation's eligibility for a fee award by reference to the assets and employees of the corporation's individual shareholders.

In sum, we believe that the statute's plain language provides no basis for the aggregation requirement that the government would have us engraft.[7] Accordingly, we AFFIRM the district court's

---

[7] We also reject USDA's related argument that NAWGA is ineligible for a fee award because NAWGA's members received a "free ride" in the APA litigation. In *State of Louisiana, Ex. Rel. Guste v. Lee,* we held that in special circumstances, participation in litigation by an eligible party may make an EAJA award for other eligible parties unjust. 853 F.2d 1219, 1225 (5th Cir.1988). This is so where the claimant for attorneys' fees is an eligible party who takes a "free ride" through litigation by joining an ineligible party who is "fully willing and able to prosecute the action against the United States." *Id.* In contrast, we concluded that "if the ineligible party's participation is nominal or narrow, then the eligible parties should not be denied the access that Congress sought to ensure by enacting the EAJA." *Id.*

award of EAJA fees to NAWGA in the amount of $163,083.75.

AFFIRMED.

REYNALDO G. GARZA, Circuit Judge, dissenting:

The majority would allow a trade association representing billion dollar corporations to receive an award of attorneys' fees under the Equal Access to Justice Act ("EAJA"). Because such a ruling ignores the intent of Congress to lessen the burden for *small* economic entities to seek review of or defend against unreasonable governmental actions, I respectfully dissent.

The majority relies on a plain-meaning approach to conclude that the National-American Wholesale Grocers' Association/International Foodservice Distributors Association ("NAWGA") has met the eligibility requirements for attorneys' fees under EAJA, 28 U.S.C. § 2412(d)(2)(B)(ii). NAWGA was a prevailing party against the government, had a net worth less than $7 million and fewer than 500 employees, and funded the litigation. At first glimpse, NAWGA apparently qualifies for an award. I agree with the majority that the text is paramount but I also agree with them that when strict adherence to the words of a statute "[leads] to absurd or futile results," the Court should "look[ ] beyond the words to the purpose of the act." *United States v. American Trucking Associations,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (footnote omitted). Even "when the plain meaning [does] not

_____

As USDA concedes, the "free-rider" analysis in *Guste* is limited to suits prosecuted against the United States by co-plaintiffs who both are eligible and ineligible, respectively, for EAJA fees, a situation not present here.

10

produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole,' " the Court should "follow[ ] the purpose rather than the literal words." *Id.*

This Court should construe the language of EAJA to "give effect to the intent of Congress." *Id.* at 542, 60 S.Ct. at 1063 (footnote omitted). We should avoid an interpretation that violates the intent of Congress to open the court to small economic entities in litigation with the government.[1] Considering the text and purpose, I believe that an award to NAWGA, which is clearly acting on behalf of its megalithic members, is an unreasonable and/or absurd result. In support of my assertion, I would adopt the reasoning and result of a Sixth Circuit decision, *National Truck Equip. v. National Hwy. Safety Admin.,* 972 F.2d 669, 673-674 (6th Cir.1992), which considered the problem currently before this panel.

In *National Truck Equip.,* an association of truck part manufacturers had successfully overturned an agency safety rule on procedural grounds and requested fees under EAJA. *Id.* at 670. The Sixth Circuit concluded that aggregation of the net worth and number of employees of trade association members is required when

---

[1]NAWGA has admitted on appeal that its members include Supervalu Inc. ($12.57 billion in revenues and 42,000 employees), Fleming Companies, Inc. (sales of $12.93 billion and 22,900 employees), SYSCO Corp. ($8.9 billion and 23,000 employees), and Kraft Foodservice, Inc. (sales of $120 million and 300 employees). *See* Standard and Poor's *Register of Corporations, Directors, and Executives 1994* (covering 1993, the pertinent year).

those associations are primarily representing the interests of their members. *Id.* at 673. The truck parts association was not entitled to fees because the aggregate net worth and number of employees of its members exceeded the eligibility standards. *Id.*

Examining the text of EAJA, the Sixth Circuit noted that Congress specifically exempted three types of associations from the net worth requirement (agricultural cooperatives, non-profit organizations and certain local unions). *Id.* at 673-674. The exemptions chosen suggest that Congress was aware that aggregation could render these types of organizations ineligible.[2] Congress made a policy choice to exempt them from the net worth requirement. While these exemptions do not use the word "aggregation," legislative history is informative.

---

[2]In 1985, Congress clarified the definition of "party" as it applies to "associations" in § 2412(d)(2)(B)(ii) to exempt certain local unions from the net worth requirement if they are separate from their international union affiliates by law. H.R.Rep. No. 99-120, 99th Cong., 1st Sess. at 17, *reprinted in* 1985 U.S.C.C.A.N. 132, 146. The House Committee's statement on this provision supports an aggregation requirement:

> It is the Committee's intent that if the local union is to be considered to be a separate labor organization for purposes of the Labor Management Reporting and Disclosure Act of 1959, it should be considered to be a separate organization for purposes of EAJA as well, and the local's entitlement of fees should be determined without regard to the assets and/or employees of the international union with which the local is affiliated.

*Id.* Why create an exemption here if the district court is to look merely at a discrete association without considering that association's affiliation. NAWGA is in a similar position to the local union with regard to NAWGA members. NAWGA *is* its members when it acts solely in their interest. Those members' net worth and number of employees should be considered in that situation when determining eligibility.

12

Senator DeConcini explained the exemption for agricultural cooperatives in the following way:

> In the West, and I suspect in other parts of the country, small farmers often band together to form agricultural cooperatives.  They have often been considered as a unit particularly in determining their assets for insurance and borrowing purposes.  Such *aggregate* treatment would cause the whole cooperative to exceed the [then] $5 million limitation.

*Reauthorization of EAJA, Hearing Before the Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary,* 98th Cong., 1st Sess. 17 (April 14, 1983) (emphasis added).  While the majority dismisses this piece of legislative history, the Senator's comment seems to indicate that the net worth of association members should be aggregated unless that type of organization is exempted.[3]

An association such as NAWGA functions like an agricultural cooperative whose members join in common economic efforts.  However, Congress provided these cooperatives with exemption from net worth limits to avoid aggregation.  Because Congress created waivers expressly for certain groups, we can properly presume that Congress did not intend to exempt *all associations* from the net worth aggregation requirement;  *expressio unius est exclusio alterius.  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 167-68, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993).  Congress must thus have intended aggregation

_____

[3]The analysis in this dissent is limited to aggregation as it would apply to associations.  Whether other entities would be affected by an aggregation rule is not before us, as noted by the majority.

13

of net worth for other associations.[4] *National Truck Equip.,* 972 F.2d at 674. Presumably, aggregation would still apply to the employee number limit since none of the entities listed in EAJA were granted exemption from that limit.

Supporting the above conclusions are the Model Rules adopted by the Administrative Conference of the United States, applicable in agency adjudications, which interpret virtually identical language to that in 28 U.S.C. § 2412(d)(2)(B). *See* 5 U.S.C. § 504(b)(1)(B) (costs and fees awards in administrative adjudications). Model Rule 0.104(f) states in part: "The net worth and number of employees of the applicant and all of its affiliates *shall be aggregated* to determine eligibility." (emphasis added). The commentary to the rule explains that "[t]he intent of Congress in passing the EAJA was to aid truly small entities rather than those that are part of a larger group of affiliated firms." Administrative Conference of the United States, Equal Access to Justice Act: Agency Implementation, 46 Fed.Reg. 32900, 32903 (1981).

Model Rule 0.104(g) states: "An applicant that participates in a proceeding *primarily on behalf of one or more persons or entities that would be ineligible is not itself eligible* for an award." 46 Fed.Reg. 32900, 32912 (emphasis added). The commentary to this rule addresses the issue of trade associations as follows:

---

[4]Even if the agricultural exemption were insufficient to establish by implication a statutory aggregation rule, at the very least it creates an ambiguity, allowing this Court to consider the policy and purpose of EAJA. The purpose of EAJA is served by an aggregation rule.

14

> Trade associations may sometimes become involved in litigation on their own account (*e.g.,* as employers) as well as in the interests of their own membership. On reflection, we believe the best way of handling this situation is through the provision on participation on behalf of others. When a proceeding involves a trade association independent of its own membership, the association's eligibility should be measured individually like any other applicant's; when an association is representing primarily the interests of its members, the agency can examine the facts of the particular situation."

46 Fed.Reg. at 32903.

The Model Rules and commentary discussed above reflect the policy of the statute. One can hardly dispute that the purpose of the Equal Access to Justice Act was "to ease the burden upon *small* businesses of engaging in litigation with the federal government." *Unification Church v. INS,* 762 F.2d 1077, 1082 (D.C.Cir.1985). As the Eighth Circuit noted, "EAJA awards should be available where the burden of attorneys' fees would have deterred the litigation challenging the government's actions, but not where no such deterrence exists." *SEC v. Comserv,* 908 F.2d 1407, 1415-1416 (8th Cir.1990). *See also* Pub.L. No. 96-481, § 202, 94 Stat. 2325 (1980) ("It is the purpose of this title—to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees ... against the United States.").

Congress was not likely concerned that a trade association *wholly* financed by its large corporate members would be deterred from litigation. EAJA reveals Congress's "desire not to subsidize ... the purchase of legal services by large entities easily able to afford legal services." *Unification Church,* 762 F.2d at 1083. Under the logic of the majority, any large industrial group

15

(petroleum, automobile manufacturing, etc ...) could set up and fund an association separate from itself that would readily meet EAJA's limits on net worth and employees even though its individual members or members in the aggregate would not. EAJA was not intended to fund the litigation of corporate Goliaths in the costume of David.

We thus are not compelled to reach the result advocated by the majority. Based on statutory analysis, reference to legislative policy, and commentary in an identical provision in the Administrative Conference Model Rules, I would hold that awarding EAJA fees to NAWGA was improper without consideration of NAWGA's members' net worth and number of employees. As the Sixth Circuit stated in *Nat'l Truck Equip.,*

> When businesses have the economic power to pursue litigation against the government without being deterred by the costs, the congressional purposes of the EAJA are undermined by an award to those businesses. The same result occurs when a trade association's membership also contains a number of companies who can readily afford the costs to protect their own interests.

972 F.2d at 674.

I would reverse and remand for the district court to determine whether NAWGA primarily represents its own interests or those of its members. If NAWGA is primarily representing the interests of its members, the district court should then aggregate the net worth and employees of those members to determine the association's eligibility. Given that NAWGA has conceded that it has at least one ineligible member, I suspect that NAWGA would be ineligible for

16

fees.[5]

---

[5]I disagree with the majority that aggregation would be unfair to eligible members of an association.  What financial deterrent exists for a trade group when the members' combined net worth exceeds $7 million or when that group has members with billions in assets?  Such a group is likely both willing and able to defend itself against government actions absent EAJA fee awards.